UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TAYLOR SOMMER, *et al.*,<br><br>　　　　　　Plaintiffs,<br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*,<br><br>　　　　　　Defendants. | Case No.: 2:23-cv-01682-GMN-BNW<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Pending before the Court is the Motion to Dismiss, (ECF No. 6), filed by Defendants Las Vegas Metropolitan Police Department ("LVMPD"), Sheriff Kevin McMahill, Sergeant Bagaporo, Sergeant Blum, Officer Garcia and Officer Ortega.  Plaintiff Taylor Sommer, individually and as the Administrator of the Estate of Reiner Shawn Sommer, filed a Response, (ECF No. 13), to which Defendants filed a Reply, (ECF No. 14).

For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Dismiss.

**I.　BACKGROUND**

This case arises from the in-custody death of Reiner Shawn Sommer. (*See generally* Compl., ECF No. 1).  Plaintiff Taylor Sommer is an heir of Reiner and the duly appointed, qualified and acting Administrator of the Estate of Reiner Shawn Sommer. (*Id.* ¶ 7).  The specific facts underlying Reiner's death as alleged in Plaintiff's Complaint are as follows.

On October 17, 2021, Reiner was involved in a domestic dispute at his house. (*Id.* ¶ 31). LVMPD responded to Reiner's home, where they were advised that Reiner was bipolar and on various medications. (*Id.* ¶ 31–32).  That night, Reiner was transported by ambulance to Southern Hills Hospital for medical care and treatment. (*Id.* ¶ 32). The next morning, Reiner was discharged with various medication prescriptions. (Compl. ¶ 35).  As Reiner awaited his prescriptions at the Walgreens across the street from the hospital, the pharmacist noticed that

Reiner did not look well because he was visibly sweating and moaning in apparent pain. (*Id.* ¶ 38). After Reiner declined an offer from the store manager to call for medical assistance, the manager found Reiner in the restroom lying on the floor near the toilet and called for medical assistance. (*Id.* ¶ 40). As Clark County Fire Department ("CCFD") awaited American Medical Response ("AMR's") arrival, Reiner began scooping water out of the toilet bowl and into his mouth. (*Id.* ¶ 43). Reiner continued to thrash about in obvious pain and discomfort and eventually dislodged the toilet from the floor due to his weight. (*Id.*). CCFD personnel called for police assistance due to Reiner's agitation and general demeanor. (*Id.* ¶ 44). Reiner did not threaten to harm anyone at any point, and no one asked that he leave the Walgreens premises. (*Id.* ¶ 44–45).

Defendants, Las Vegas Metropolitan Police Department (LVMPD) Sergeants Bagaporo and Blum, arrived at the Walgreens where they were told by a Walgreens employee that Reiner had just been discharged from the hospital and was having "some kind of diabetic episode or something." (*Id.* ¶ 49). Sergeant Blum asked whether Reiner had been fighting with anyone on the premises, to which the employee responded, "there was no altercation here." (*Id.*). A few minutes later, Sergeant Blum arrived at the restroom area and described his plan to take Reiner into custody on the basis of either a trespass or a Legal 2000. (*Id.* ¶ 52). Sargeant Blum approached the open restroom stall where Reiner was laying on his back with his head near the toilet. (*Id.* ¶ 53). Sergeant Blum asked, "Hey bud, are you alright?" "Hey, are you okay?" and "Hey, can we help you?" (*Id.*). Reiner responded "No." (*Id.*). Reiner rolled onto his knees and knelt over the toilet bowl with his back to the police officers and again used his hands to scoop water from the toilet bowl into his mouth and continued to grunt and yell in apparent pain. (*Id.* ¶ 54). Sergeant Blum again asked, "Are you okay?" and said, "Come on out here for us." (*Id.*).

Sergeant Blum called dispatch and requested that another unit be dispatched to the scene, stating that "[Reiner] is definitely in a medical crisis right now." (*Id.*). Sergeant Blum

verbally noted that there were no weapons anywhere around Reiner. (*Id.* ¶ 55). Sergeant Blum asked "Hey, can you come out here and talk to us." (*Id.*). Reiner responded "No" and Sergeant Blum inquired "Why not?" (*Id.*). Reiner moved away from the toilet on his knees and laid down on his stomach with his head at the opposite end of the stall. (*Id.* ¶ 56). Sergeant Blum once again asked "Are you okay?" (*Id.*). Reiner responded "Yes." (*Id.*). Sergeant Blum told Reiner to "Come on out here" before directing the other officers, "Now." (*Id.*).

Upon Sergeant Blum's direction, a third Defendant, LVMPD Officer Garcia, and Sergeant Bagaporo rushed into the stall and jumped on top of Reiner, who was laying on his stomach. (*Id.* ¶ 57). As the police officers held their weight on Reiner, Reiner stated that he could not breathe. (*Id.* ¶ 58). Sergeant Blum yelled "Relax, relax, give us your arms and you can breathe." (*Id.*). The officers continued to hold their weight on Reiner for several minutes as they attempted to handcuff him. (*Id.*). The fourth Defendant, LVMPD Officer Ortega arrived and was directed to relieve Sergeant Blum near Reiner's left shoulder. (*Id.* ¶ 59). Shortly thereafter, the officers dragged Reiner partly out of the stall to have more space. (*Id.*). Sergeant Blum stated, "He's giving up." (*Id.* ¶ 60). At that point, Reiner's skin tone was noticeably purple. (*Id.*). The police officers dragged Reiner out of the bathroom. (*Id.* ¶ 61). Sergeant Blum noted that "[Reiner was] turning purple" and directed that the handcuffs be removed to allow medical "to start working on him." (*Id.*). Medical personnel attempted to resuscitate Reiner without success before he was transported across the street to Southern Hills Hospital. (*Id.* ¶ 62). Approximately four minutes after removing Reiner from the bathroom, Sergeant Blum stated that Reiner had no pulse. (*Id.*).

After the incident, Plaintiff brought a civil rights action against the City of Las Vegas, the LVMPD agency, the LVMPD Sheriff Kevin McMahill, and the four responding LVMPD sergeant/officers arising under both federal and state law for damages resulting from Defendants' conduct. (*See generally* Compl.). Plaintiff brings five federal claims under Section

1983 of Title 42 of the United States Code: (1) excessive force against all Defendants (first cause of action); (2) Fourteenth Amendment deprivation of familial relationship against all Defendants (third cause of action); and (3) three separate *Monell* claims against LVMPD (second, fourth, and fifth causes of action). (*Id.* ¶¶ 80–119). Plaintiff also alleges five claims under Nevada law against all Defendants[1]: (1) negligence; (2) intentional/negligent infliction of emotional distress; (3) wrongful death; (4) common law battery; and (5) violation of the Nevada Constitution Article 1 Section 8. (*Id.* ¶¶ 120–136; 143–156). Lastly, plaintiff asserts a state negligent supervision and training claim against LVMPD (ninth cause of action). (*Id.* ¶¶ 137–142). Defendants move to dismiss Sheriff Kevin McMahill from the lawsuit, the official capacity claims against the individually named defendants, the *Monell* claims against LVMPD, and the state-law negligent training and supervision claim. (Mot. Dismiss 3:4–13, ECF No. 6).

## II. LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[1] Plaintiff's Complaint is unclear as to which defendants they are asserting each state law claim against. Both parties appear to agree that the claims against Sheriff McMahill are limited to the §1983 claim in which he is named; the Court therefore assumes that the state law claims are asserted against all police department officer defendants and LVMPD unless otherwise stated.

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

These same standards apply to claims against municipal governments under § 1983. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). A plaintiff's allegations "may not simply recite the elements" of a claim under *Monell*. *See id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). The complaint must "contain sufficient allegations of underlying facts to give fair notice" of plaintiff's claims and allow the municipal government "to defend itself effectively." *Id.* (quoting *Starr*, 652 F.3d at 1216). The plaintiff's allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216).

If the court grants a motion to dismiss for failure to state a claim, the court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**III.   DISCUSSION**

As a preliminary matter, the Court notes that the parties do not dispute the dismissal of the official capacity claims against the individual officers. (Resp. 13:7–9); (Reply 3:5–6). Accordingly, the official capacity claims against each of the four individually named officers Bagaporo, Blum, Garcia, and Ortega are DISMISSED. Thus, the remaining issues to be

resolved in this case are the dismissal of the *Monell* claims against the LVMPD, the dismissal of Sheriff Kevin McMahill, and the dismissal of plaintiff's state-law negligent training and supervision claims pursuant to NRS 41.032. (*See generally* Mot. Dismiss). The Court will address each argument in turn.

**A.  Dismissal of the *Monell* Claims Against LVMPD**

Defendants contend that Plaintiff failed to plead sufficient facts to support their *Monell* failure to train and supervise claims against LVMPD because plaintiff's allegations involve only the incident regarding Reiner and thus do not plausibly establish LVMPD's deliberate indifference. (Mot. Dismiss 10:3–25). Plaintiff responds that their allegations are sufficient to support their *Monell* claims. (Resp. 15:1–16:12).

Municipalities are considered "persons" under 42 U.S.C. §1983 and therefore may be liable for causing a constitutional deprivation. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Neither state officials nor municipalities are vicariously liable for the deprivation of constitutional rights by employees. *Id*. at 694.  Rather, as to a municipality, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  To meet the deliberate indifference requirement, a plaintiff "must demonstrate a conscious or deliberate choice on the part of a municipality in order to prevail on a failure to train claim." *Flores v. Cty. Of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (internal quotation marks and citation omitted). A municipality is "deliberately indifferent" when the need for more or different action, "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can be reasonable be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390; *Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2001).  The Supreme Court has emphasized that "[a]

municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

A "pattern of similar constitutional violations" is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Connick v. Thompson*, 563 U.S. 51, 62, (2011) (quoting *Board of Comm'rs of Bryan Cty. V. Brown*, 520 U.S. 397, 409 (1997)). Plaintiff does not allege pattern of constitutional violations here. Plaintiff asserts that "[i]nteractions with people suffering medical and mental health crises are a usual and recurring situation which law enforcement agencies . . . encounter on a regular basis," and thus "LVMPD knew that its officers needed specific training" on the generally accepted practices for those interactions. (*Compl.* ¶ 92-93). Plaintiff does not allege, however, that LVMPD has frequently sent untrained officers to intervene when people are suffering from mental health crises. Nor does the Complaint provide a list of examples of the LVMPD's officers using force on people suffering health and mental health crises in a way that led to occurrences such as this one. While the Complaint states in a conclusory manner that "Defendants knew, or in the exercise of reasonable care should have known, of a history and propensity and pattern prior to and after the time of the use of excessive force upon Reiner," it does not provide any evidence of "a pattern of constitutional violations." *See Connick*, 563 U.S. at 62. Thus, Plaintiff has not adequately alleged that LVMPD was put on notice that their training program was deficient. *See id.*

That said, the "unconstitutional consequences" of inaction "could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64. In those instances, "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer

reflected 'deliberate indifference.'" *Bryan Cty.*, 520 U.S. at 409. This is true in only a "narrow range of circumstances." *Id*.

Courts have found that a police department's complete lack of training or policy for responding to mental health crises would lead to "highly predictable" constitutional violations such that it amounts to deliberate indifference. *See Garcia v. Yuba Cnty Sheriff's Dep't*, 559 F.Supp.3d 1122, 1130–32 (E.D. Cal. 2021) (finding the single instance exception met when untrained police officers were dispatched to respond to a call about someone trying to commit suicide and the city allegedly had *no policy* "for dealing with suspects suffering from mental health crises"); *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 814 F. Supp. 2d 967, 978 (E.D. Cal. 2011) ("[T]he failure to have *any* continuing education training on handling mentally ill people and the failure to address the issues *at all* in the police manual creates at least triable issues with respect to whether [the local government's] failure to train amounted to deliberate indifference . . . ." (emphases in original)).

Unlike the plaintiffs in those cases, Plaintiff here does not allege that LVMPD has *no policy or training* regarding interactions with people suffering mental health crises. She alleges only that LVMPD provided "inadequate" training. (Compl. ¶ 108). Unlike a police department that has no policy or training, LVMPD's allegedly inadequate policy or training for responding to mental health crises is not the kind of inaction that would lead to "patently obvious" or "highly predictable" constitutional violations. Without additional factual allegations supporting a finding that LVMPD's policies would obviously lead to constitutional violations, the complaint does not establish that LVMPD acted with deliberate indifference. The Court therefore finds that Plaintiff's Complaint fails to state a *Monell* claim against LVMPD based upon a theory of failure to train, and therefore DISMISSES this claim without prejudice. Because this defect is capable of correction, the Court grants leave to amend this claim.

/ / /

**B. Dismissal of Sheriff Kevin McMahill**

Defendants also move for the dismissal of Sheriff Kevin McMahill from the lawsuit because (1) he was not yet the Sheriff at the time of the incident, (2) the official capacity claims against the Sheriff are duplicative of the claims against LVMPD, and (3) the individual claims against the Sheriff must be dismissed because supervisory officials are not liable for the actions of subordinates under §1983. (Mot. Dismiss 3:4–13).

The parties agree that former Sheriff, Joe Lombardo, was the Sheriff at the time of the incident and should have been the party named. (Mot. Dismiss 6:10–15); (Resp. 11:2–8). Accordingly, the Court DISMISSES all claims against Kevin McMahill with prejudice. The Court instructs Plaintiff to amend her complaint to name the correct party in the place of Sheriff McMahill. Until the correct party has been named and given an opportunity to respond, the Court declines to decide whether the claims asserted originally against Sheriff McMahill, if they had been properly asserted against Sheriff Lombardo, should be dismissed.

**C. Dismissal of Plaintiff's Negligent Training and Supervision Claims**

Defendants also move to dismiss Plaintiff's negligent training and supervision claim, arguing that it must fail as a matter of law because "decisions relating to the hiring, training and supervision of employees" fall within Nevada's discretionary-function immunity under NRS 41.032. (Mot. Dismiss 11:1–15).  In their response, Plaintiff argues only that the *individual officers*' decisions are not entitled to immunity and does not address the issue of whether discretionary-function immunity applies to LVMPD's supervision and training decisions. (Resp. 20:18–21:11).

Under Nevada law, state actors are entitled to discretionary-function immunity if the decision they made: "(1) involve[s] an element of individual judgment or choice and (2) [is] based on considerations of social, economic, or political policy." *Martinez v. Maruszczak*, 168 P.3d 720, 727 (Nev. 2007).  As a state actor, LVMPD's decisions can be entitled to

discretionary-function immunity. *See Paulos v. FCH1*, 456 P.3d 589, 595–96 (Nev. 2020). Nevada's discretionary-function immunity statute mirrors the Federal Tort Claims Act (FTCA), and the Nevada Supreme Court adopted the FTCA *Berkovitz-Gaubert* test enunciated by the United States Supreme Court for determining whether acts fall within the scope of discretionary-act immunity. *Id.* at 729. To give rise to discretionary-act immunity, the act "must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Id.* In *Vickers v. United States*, the Ninth Circuit noted that "decisions relating to the hiring, training, and supervision of employees usually invoke policy judgment of the type Congress intended the discretionary function exception to shield." 228 F.3d 944, 950 (9th Cir. 2000). The Nevada Supreme Court affirmed this view, holding that LVMPD's decision to hire and train an officer involved a sufficient element of choice and the department's decisions governing the training process are reasonably subject to policy analysis such that discretionary-function immunity applies. *See Paulos*, 456 P.3d at 595–96.

Plaintiff challenges LVMPD's decisions regarding training and supervision of officers on the use of deadly force and interactions with people suffering from medical and/or mental health crises. (Compl. ¶ 107–209). Those decisions, like the hiring and training decisions the Nevada Supreme Court considered in *Paulos*, involve an element of choice under the first prong of the *Berkovitz-Gaubert* test. *See* 456 P.3d at 595–96; *see also Martinez*, 168 P.3d at 729. Additionally, the decision on how to train officers on these issues is subject to policy analysis, meeting prong two of the test. *See id.* While there are limitations on discretionary-act immunity for actions taken in bad faith and acts taken in violation of the Constitution, Plaintiff has not alleged any facts to support such a finding here. *See Falline v. GNLV Corp.*, 832 P.2d 888, 891 (Nev. 1991) (bad faith); *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007) ("where an officer's actions are attributable to bad faith, immunity does not apply

whether an act is discretionary or not"); *Nurse v. U.S.*, 226 F.3d 996, 1002 (9th Cir. 2000) ("[i]n general, governmental conduct cannot be discretionary if it violates a legal mandate").

The Court finds that the challenged LVMPD training and supervision decisions involve an element of choice and a subject to policy analysis, and therefore fall under Nevada's discretionary-immunity statute. Accordingly, the Court DISMISSES this claim without prejudice. Because it is not clear that amendment would be futile, the Court grants Plaintiff leave to amend this claim.

### IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 6), is **GRANTED.** The Court **DISMISSES with prejudice** all claims against Sheriff Kevin McMahill. The Court grants leave to amend for Plaintiff to name the acting Sheriff at the time of the incident at issue in this case. The Court further **DISMISSES without prejudice** and with leave to amend the *Monell* claims asserted in Plaintiff's second, fourth, fifth causes of action. The Court further **DISMISSES without prejudice** and with leave to amend the state law Negligent Training and Supervision claim asserted in Plaintiff's ninth cause of action.

**IT IS FURTHER ORDERED** that Plaintiff shall have 21 days from the date of this Order to file an amended complaint. Any amended complaint should remedy the deficiencies identified in this Order. Failure to file an amended complaint by this date shall result in the Court dismissing Plaintiff's claims with prejudice.

**DATED** this  29   day of September, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT